IRVING, J.,
for the Court.
¶ 1. The Chancery Court of Grenada County granted Mary Melissa (Melissa) and Jonathan Harbit a divorce on the ground of irreconcilable differences. Pursuant to a consent of issues agreement, the chancellor also resolved certain issues which were submitted to her for resolution. Aggrieved by the chancellor’s decision, Jonathan appeals and asserts the following points of error, which we quote verbatim:
1.Whether the Chancellor erred when she failed to grant Mr. Harbit’s Motion for New Trial after the Chancellor allowed “unsworn” testimony to be taken in violation of Miss. Rule of Evidence 603.
2. Whether the Chancellor erred when she allocated a debt incurred during the course of the marriage to Mr. Harbit.
3. Whether the Chancellor erred when she ordered Mr. Harbit to pay Ms. Har-bit’s attorneys fees.
¶ 2. Finding no reversible error, we affirm.
FACTS
¶ 3. Melissa and Jonathan agreed to a divorce on the ground of irreconcilable differences and submitted to the chancellor for resolution the issues of child custody, child support, division of the marital estate, alimony, and attorney’s fees.[1]
¶ 4. Prior to the commencement of trial, Melissa made an offer of judgment pursuant to Rule 68 of the Mississippi Rules of Civil Procedure. We defer any further discussion of the offer until we address the attorney’s fee issue. It is sufficient at this juncture to note that the offer was rejected by Jonathan.[2] After the trial, which included the testimony of only the parties, the chancellor awarded custody of the parties’ minor child to Melissa and ordered Jonathan to pay the balance owed on a Toyota 4Runner in the amount of $2,046.76. Additionally, the chancellor, after unsealing and reading the offer of judgment, ordered Jonathan to pay Melissa’s attorney’s fees in the amount of $2,000, as the chancellor determined that Jonathan had received a judgment less favorable than the offer tendered to him by Melissa. Additional facts, as necessary, *159 will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Unsworn Testimony

¶ 5. Upon commencement of the trial, both Jonathan and Melissa testified without first being sworn. When Jonathan was later recalled as a rebuttal witness, the trial judge expressed concern that the witnesses may not have been sworn. On this point, the record reflects the following:
[APPELLANT’S ATTORNEY]: May I approach the witness?
THE COURT: Yes, you may. Let me ask a question.
[APPELLANT’S ATTORNEY]: Okay.
THE COURT: Were these witnesses sworn before we started our testimony?
[APPELLANT]: Nope.
THE COURT:[3] Your Honor, very candidly we swore the prior witnesses and I think we proceeded right on along without that, and I think the Court is correct. We need to make a record right at this very moment on both of them.
THE COURT: I am going to ask the Clerk to please swear these witnesses and ask if they will swear that the testimony they have already given— and I want both of you to think long and hard about that, because we did not administer an oath, and I’m sorry. I just forgot that we had not sworn y’all.
[COURT] CLERK: All witnesses please stand up. Do you and each of you solemnly swear and affirm that the existing testimony that you have given, plus the testimony you are about to give is the truth, the whole truth, and nothing but the truth, so help you God?
[APPELLANT]: Yes, I do.
[APPELLEE]: Yes, sir.
¶ 6. In this issue, Jonathan contends that the trial judge erred in basing her findings of fact and conclusions of law on “un-sworn” testimony. Jonathan heavily relies on Rule 603 of the Mississippi Rules of Evidence, which reads: “Before testifying, every witness shall be required to declare that he will testify truthfully, by oath or affirmation administered in a form calculated to awaken his conscience and impress his mind with his duty to do so.”
¶ 7. Further, Jonathan relies on Scoggins v. Ellzey Beverages, 743 So.2d 990 (Miss.1999) and Pierce v. Heritage Properties, Inc., 688 So.2d 1385 (Miss.1997). Neither of these cases involve the failure of a witness to be sworn before giving trial testimony. Rather, they deal with the failure of witnesses to give truthful information during discovery. Scoggins, 743 So.2d at 997 (¶ 36); Pierce, 688 So.2d at 1388. Therefore, they provide no support for Jonathan’s position.
¶ 8. In this case, although Jonathan and Melissa initially gave unsworn testimony, they each later affirmed under oath that the unsworn testimony that they had given was true and correct. Therefore, the real issue is whether the swearing in of Jonathan and Melissa, after they had given unsworn testimony, was effective. We answer in the affirmative.
¶ 9. Jonathan has cited no authority in support of this specific issue, and we have *160 not found any Mississippi case law on this specific issue. Therefore, we consider authority from other states and circuits that have spoken to the issue.
¶ 10. In Saxton v. State, 389 So.2d 541(Ala.Crim.App.1980), an Alabama trial court was faced with a situation substantially analogous to ours. There, a state witness testified on direct examination without being sworn. Id. at 543. At the conclusion of the direct examination, the defense counsel moved for a mistrial on the basis that the witness had not been sworn. Id. The court interrupted the proceedings, swore in the witness, and allowed the witness to be reexamined. Id. The court denied the motion for a mistrial. Id. On appeal, the Alabama Court of Criminal Appeals noted that defense counsel made no objection during the first examination of the witness and held that the trial court did not err in overruling the motion for a mistrial. Id. The court also held that “[i]f a witness is allowed to give evidence before the jury without first being lawfully sworn, it is the duty of the judge, as soon as it is called to his attention, to immediately administer a proper oath.” Id.
¶ 11. In United States v. Perez, 651 F.2d 268, 273 (5th Cir.1981), the United States Court of Appeals for the Fifth Circuit noted that the general rule is that the failure to swear a witness may be waived. The court also noted that the waiver “may occur by knowing silence and an attempt to raise objection after verdict or by the mere failure of counsel to notice the omission before completion of trial.” Id. (footnote omitted).
¶ 12. In Beausoliel v. United States, 107 F.2d 292, 294 (D.C.Cir.1939), the United States Court of Appeals for the District of Columbia observed “that the irregular administration of the oath to a witness, or the taking of testimony without an oath at all, must, if known to the adverse party, be objected to at the time.” The court further noted that a defendant “may not, with knowledge of the irregularity, permit the trial to proceed, and raise the question after verdict.” Id.
¶ 13. Finally, in State ex rel. Tucker v. AMs, 89 N.E.2d 328, 328 (Ohio CtApp. 1949), the Ohio appeals court for the second district observed that when the failure to swear a witness is known at the time, “the defect must be taken advantage of at once and the failure to do so is such acquiescence in the testimony as will preclude objection after the verdict.”
¶ 14. We find the holdings of the above cases quite persuasive. Consequently, we hold that the chancellor in today’s case acted promptly and properly when it occurred to her that the witnesses had not been sworn. As noted in the colloquy quoted above, the chancellor had the witnesses sworn immediately and required them to attest under oath that the testimony already given was true and correct. We also note that Jonathan never objected to the witnesses not being sworn and was about to give rebuttal testimony when the court on its own questioned whether the witnesses had been sworn. After the court was assured by Jonathan that he and Melissa had not been sworn, the court moved immediately to correct the oversight. Rather than object to the court’s failure to swear in the witnesses, Jonathan waited until after the chancellor was almost completely finished rendering the verdict favorable to Melissa before he suddenly moved for a mistrial on the ground of “unsworn” testimony. Therefore, even though we find no fault with the chancellor’s handling of this matter, we find that Jonathan waived the issue of the court’s failure to initially swear in the witnesses, because he failed to timely object. This contention of error is without merit.

*161
2. Equitable Distribution

¶ 15. Next, Jonathan argues that the chancellor erred in requiring him to pay the indebtedness on the Toyota 4Run-ner. Melissa owned the 4Runner prior to the marriage, but it was used as collateral for a loan made during the marriage, and the proceeds of that loan were used for marital obligations.
 ¶ 16. Jonathan accurately states that assets classified as marital are distributed equitably. Bowen v. Bowen, 982 So.2d 385, 395 (¶ 41) (Miss.2008) (citing Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994)). However, equitable distribution of marital assets is committed to the discretion of the chancellor and is not disturbed absent clear error or application of an erroneous legal standard. Bodne v. King, 835 So.2d 52, 60 (¶33) (Miss.2003) (citing Arthur v. Arthur, 691 So.2d 997, 1003 (Miss.1997)). Moreover, the Mississippi Supreme Court has repeatedly stated that “the chancellor’s division and distribution will be upheld if it is supported by substantial credible evidence.” Bowen, 982 So.2d at 394 (¶ 32) (quoting Carrow v. Carrow, 642 So.2d 901, 904 (Miss.1994)).
¶ 17. Here, the record reflects uncon-tradicted testimony that the indebtedness was incurred to assist with marital obligations because Jonathan was unemployed for a prolonged period of time. Accordingly, we cannot find an abuse of discretion with the chancellor’s decision to assign the debt solely to Jonathan. This issue is without merit.

3. Attorney’s Fees

 ¶ 18. Finally, Jonathan argues that the chancellor erred by ordering him to pay Melissa’s attorney’s fees. Jonathan specifically argues that the court should have considered the McKee factors[4] in determining whether or not to award Melissa attorney’s fees. McKee v. McKee, 418 So.2d 764, 767 (Miss.1982). We find that the primary purpose of requiring the trial judge to perform the McKee analysis is to ensure that any award of attorney’s fees that the judge may order is reasonable and supported by the evidence. It should be noted that “the matter of determining attorneys fees in divorce cases is largely entrusted to the sound discretion of the trial court.” Id. (citing Walters v. Walters, 383 So.2d 827, 828 (Miss.1980)).
¶ 19. In awarding $2,000 in attorney’s fees to Melissa, the chancellor relied on the dictates of Rule 68 of the Mississippi Rules of Civil Procedure, which states:
At any time more than fifteen days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within ten days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the court shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the *162 offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict, order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time, not less than 10 days, prior to the commencement of hearing to determine the amount or extent of liability.
(Emphasis added).
¶ 20. The chancellor determined that the judgment rendered was less favorable to Jonathan than the offer. According to Rule 68, Jonathan would only be required to pay the costs incurred by Melissa from the point of rejection of the offer until the conclusion of the trial. Therefore, the real issue is whether costs, as specified in Rule 68, include attorney’s fees. Since Jonathan has not provided us with any Mississippi authority on this point, and our independent research has revealed none, we look to federal jurisprudence.[5] In Marek v. Chesny, 473 U.S. 1, 9, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985) (overruled on other grounds), the United States Supreme Court held:
[T]he most reasonable inference is that the term “costs” in [Federal] Rule 68 was intended to refer to all costs properly awardable under [a] relevant substantive statute or other authority.... Thus, absent congressional expressions to the contrary, where the underlying statute defines “costs” to include attor-ne/s fees, we are satisfied such fees are to be included as costs for the purposes of [Federal] Rule 68.
¶ 21. We are not aware of any Mississippi statute that authorizes a chancellor to award attorney’s fees, as part of the costs, to a prevailing party in a divorce proceeding. While there is plenty of authority authorizing a chancellor, in the chancellor’s discretion, to award attorney’s fees to a party in a divorce action, that authority is decisional law and is based on the financial needs of the party. Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). Therefore, we find that the chancellor erred in using Rule 68 to calculate the amount of attorney’s fees awarded to Melissa. However, as previously mentioned, the matter of determining attorney’s fees in divorce cases lies within the sound discretion of the chancellor.
¶ 22. In discussing the attorney’s fees, the chancellor stated:
THE COURT: With regard to Mrs. Harbit’s request for attorney’s fees, I did some calculations on the attorney’s fees. It’s obvious from the bill that was submitted and affidavit that was submitted as Exhibit Five that this bill is up to the trial of this case. There is no charge on the bill for today’s trial and I have basically added two hours of time for Mr. Harlow. I know you have probably been here longer than that, Mr. Harlow, and you have two assistants here and I know they are going to bill for their time also.
But when I added two hours to Mr. Harlow’s time his bill totals $3,313.93, and my initial reaction was that I was *163 going to require you, Mr. Harbit, to pay one half of those attorney’s fees; however, then after I had written out all of my notes I did open the offer of judgment that was done on April the 16th and basically I have awarded or y’all have agreed upon — some of the things y’all agreed upon on your own, some of the things I have awarded y’all or I have made a ruling on.
But I think you would have been much better off to take the offer of judgment at that time, but the Mississippi Rules of Civil Procedure say that once an offer of judgment is made, if it’s not accepted within ten days, then any attorney’s fees, costs associated with prosecuting the case or that are incurred after that time are assessable to you.
The Court is not required to, but the Court certainly has every bit of authority to assess those against you. So I went back through that attorney’s affidavit and that bill and added up the time that was spent on your case prior to the offer of judgment being made and subtracted that from the total bill and according to my calculations it was a little over $2,000 that you would be assessed with.
So I changed my little notes about what I was going to rule and I am going to assess you with $2,000.00 of Mrs. Harbit’s attorney’s fees and that will be payable within 30 days directly to Mr. Harlow.
¶ 23. The chancellor essentially determined that but for Rule 68 she would have ordered Jonathan to pay one-half of Melissa’s attorney’s fees. While we find that the chancellor erred in using Rule 68 to calculate the amount of attorney’s fees due, we also find clear and substantial evidence that the chancellor would have awarded attorney’s fees to Melissa even if there had been no offer of judgment. We further find that based on the chancellor’s own pronouncement, that amount would have been one-half of the amount of attorney’s fees incurred by Melissa in the litigation. Exhibit 5, which was admitted into evidence, was Melissa’s attorney’s bill for all services rendered except for the trial. The chancellor found that the trial lasted two hours, and she added $350 to the bill for service rendered during the trial, bringing the total amount of the attorney’s bill to $3,313.93.
¶ 24. An appellate court may affirm a trial court on other grounds if it finds that the trial court reached the right result despite its flawed or erroneous premises. Mason v. S. Mortg. Co., 828 So.2d 735, 738 (¶ 15) (Miss.2002) (citing Puckett v. Stuckey, 633 So.2d 978, 980 (Miss.1993)). Here, we find that the chancellor was justified in awarding attorney’s fees to Melissa. Therefore, we exercise our authority to affirm on other grounds the chancellor’s decision to award attorney’s fees to Melissa. We do so despite the fact that the chancellor did not perform the McKee analysis, because, for the following reasons, we find that this omission did not cause Jonathan to suffer any prejudice. The divorce complaint was filed on February 20, 2007. The two-day trial commenced on June 14. The docket index reflects that in the approximate four months prior to trial, a modest amount of activity occurred. As stated, the chancellor indicated that she would have ordered Jonathan to pay one-half of Melissa’s attorney’s fees. That amount would have been $1,656.97. We find that, on these special facts, a McKee analysis is not indispensable to determining the reasonableness of this amount. Accordingly, we modify the amount of attorney’s fees awarded from $2,000.00 to $1,656.97 to represent one-half of the total amount of *164 attorney’s fees incurred by Melissa. The judgment of the trial court is affirmed in all other particulars.
¶ 25. THE JUDGMENT OF THE CHANCERY COURT OF GRENADA COUNTY IS AFFIRMED AS MODIFIED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., BARNES AND ROBERTS, JJ., CONCUR. ISHEE, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY LEE, P.J., ISHEE AND CARLTON, JJ. CARLTON, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.

. The parties later agreed that Melissa would have physical custody of the parties' minor child.

. After Jonathan rejected the offer, it was sealed and filed among the clerk’s papers.

. We assume that the court reporter made an error in transcribing that this statement was made by the court. It seems more likely that this statement was made by one of the attorneys.

. The McKee factors include "the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.” McKee, 418 So.2d at 767.

. Rule 68 of the Mississippi Rules of Civil Procedure is patterned after Federal Rule 68, which provides that "[i]f the judgment that the offeree finally obtains is not more favorable than the unacceptable offer, the offeree must pay the costs incurred after the offer was made.” (Emphasis added).